1

2

3

4

5                                      UNITED STATES DISTRICT COURT

6                                      NORTHERN DISTRICT OF CALIFORNIA

7

8    DEREK WHEAT,                                      No. C-12-6299 EMC

9              Plaintiff,

10        v.                                           **ORDER GRANTING DEFENDANTS'
                                                       MOTION TO DISMISS**
11   ALBERT LEE, *et al.*,
                                                       **(Docket No. 24)**
12             Defendants.
     _____/
13

14

15                          **I.    INTRODUCTION**

16        Plaintiff Derek Wheat is a parolee under the supervision of the California Department of

17   Corrections, Division of Adult Parole.  He brings the instant suit against Charles Gibson, his parole

18   officer, and Albert Lee, Gibson's supervisor, in connection with various events arising in the course

19   of his parole supervision.  Pending before the Court is Defendants' motion to dismiss Plaintiff's first

20   amended complaint.  Defendants seek dismissal of one of the three federal claims and six of the

21   seven state claims asserted by Plaintiff.  Defendants also seek dismissal of the state assault and

22   battery claim as to Defendant Lee.

23                    **II.    FACTUAL & PROCEDURAL BACKGROUND**[1]

24        In September 2009, Plaintiff was released from county jail after conviction of a non-violent

25   felony, and told to report the parole office.  First Amended Complaint ("FAC") ¶ 11.  Upon

26   reporting to the parole office, Plaintiff was assigned to Parole Agent Charles Gibson.  FAC ¶ 12.

27   _____

28        [1] On this motion to dismiss, the following facts are drawn from the First Amended
     Complaint and construed in the light most favorable to Plaintiff.

**United States District Court**
For the Northern District of California

1    The Berkeley parole office was supervised by Albert Lee. FAC ¶ 13. Since being on parole,

2    Defendant has maintained stable housing and gainful employment as a paralegal. FAC ¶¶ 14-15.

3        On June 19, 2010, Plaintiff was arrested by the Berkeley Police Department on charges of

4    making threats. FAC ¶ 16. Plaintiff alleges that these charges were fallacious, and they were later

5    dismissed. *Id.* After this arrest, Plaintiff served three and a half months for a parole violation. *Id.*

6    Plaintiff concedes that there was probable cause for this parole revocation, and does not bring claims

7    against Defendants for this incident. *Id.* After serving three and a half months for this parole

8    violation, Plaintiff posted bail and was released. FAC ¶ 17.

9        As Plaintiff began to fight the threats charges, he elected to represent himself, and conferred

10   with Defendant Gibson about whether his investigation and litigation would run afoul of his parole

11   restrictions. FAC ¶¶ 18-19. Gibson told Plaintiff that contact with police would not constitute a

12   violation of his parole so long as Plaintiff was not arrested. FAC ¶¶ 19-20. Gibson acknowledged

13   that Plaintiff had contact with police officers in the course of his work as a paralegal, and told

14   Plaintiff that such contact was not a violation of his parole so long as he was not arrested.[2] FAC ¶

15   21. After receiving these reassurances, Plaintiff began to conduct an investigation into the threats

16   charge that included researching the relationship between the arresting officer and the complaining

17   witness. FAC ¶ 22.

18       Around this time, Gibson began to confide in Plaintiff that he was having serious financial

19   troubles, and began to demand that Plaintiff lend him money. FAC ¶¶ 24-26. Plaintiff objected that

20   such requests were inappropriate and constituted extortion. FAC ¶ 27. Gibson continued to request

21   a loan. *Id.*

22       In the same conversation, Plaintiff informed Gibson that he needed to contact a police officer

23   in order to investigate his case. FAC ¶ 28. Plaintiff told Gibson what he wished to discuss with the

24   officer, and gave him a "verbatim recitation of the message he intended to leave if the officer did not

25

26

27       [2] The relevance of Plaintiff's contact with police in the course of his employment is not at all
clear, since it does not seem that Plaintiff is alleging that his research on the threats charges was part
28   of his employment duties.

1  answer." FAC ¶ 28.  Gibson indicated that this would not violate the conditions of Plaintiff's parole.

2  FAC ¶ 29.

3  Also at the same time, Plaintiff inquired about a grievance he had filed requesting to be

4  placed on non-revocable parole.  FAC ¶ 30.  He further indicated that he would be submitting two

5  new grievances:  one about Gibson's request for a loan, and one about Gibson's refusal to put

6  Plaintiff on non-revocable parole.  *Id.*  When Plaintiff indicated his intention to file these two

7  grievances, Gibson became hostile and informed Plaintiff that if he filed the grievances, Gibson

8  would revoke Plaintiff's parole if he so much as "slipped on a banana peel."  FAC ¶ 31.  Gibson

9  then ordered Plaintiff out of the office.  FAC ¶ 32.

10  On December 1, Plaintiff placed a call to the Berkeley police officer in the course of

11  investigating the threats charges against him.  FAC ¶ 33.  He left a voice mail message for the

12  officer that was identical to the message Gibson had approved.  *Id.*  On December 4, 2010, members

13  of the Berkeley Police Department questioned Plaintiff and searched his home, in what Plaintiff

14  contends was an act of retaliation for his decision to proceed in pro per in defending himself against

15  the threats charges.  FAC ¶ 34.  Plaintiff contacted Gibson and informed him of the search, even

16  though Gibson had earlier indicated that Plaintiff only needed to report arrests, and not searches.

17  FAC ¶ 35.

18  After the search of Plaintiff's home, the Berkeley police officers involved wrote a report and

19  delivered it to Gibson on December 10, 2010.  FAC ¶ 36.  This report recommended that Plaintiff's

20  parole be revoked for leaving a threatening message on the Berkeley police officer's voice mail.

21  FAC ¶¶ 38-39; Def.'s Mot. Ex. 1 (copy of police report).  That same day, Gibson called Plaintiff and

22  told him that the message Plaintiff left for the Berkeley police officer contained no threats, and did

23  not constitute a crime or a violation of his parole.  FAC ¶ 38.  Plaintiff alleges that Gibson told him

24  that Gibson had researched the law on this question and that Plaintiff's message was protected by

25  the First Amendment.  FAC ¶¶ 39-40.  At this time, Gibson indicated to Plaintiff that as long as

26  Plaintiff did not file the two grievances the two had previously discussed, Gibson would not revoke

27  Plaintiff's parole.  FAC ¶ 41.

28

3

United States District Court

For the Northern District of California

1    On December 24, 2010, Plaintiff filed a grievance regarding his request for non-revocable

2    parole, and indicated that he wished to file a second grievance regarding Gibson's request for loans.

3    FAC ¶ 42.  Plaintiff was told that he could only file one grievance at a time.  FAC ¶ 43.  On

4    December 27, 2010, Plaintiff received a phone call telling him that he needed to come to the parole

5    office to sign a paper.  FAC ¶ 44.  Plaintiff went to the parole office, and was called back to meet

6    with Gibson.  FAC ¶ 45.  Plaintiff alleges that he was then rushed by a group of six officers led by

7    Gibson, who had his fists clenched and was "in a boxer's pose."  FAC ¶ 45.  The complaint does not

8    identify the other officers involved.

9    Gibson informed Plaintiff that he was being arrested for calling the police.  FAC ¶ 47.

10   Plaintiff protested that he had a First Amendment right to call whomever he pleased, and Gibson

11   stated that Plaintiff "had no rights when he was on Gibsons's 'case load'" and that Gibson would

12   revoke Plaintiff's parole if Plaintiff exercised his rights in a way that Gibson disliked.  FAC ¶ 48.

13   When Plaintiff objected that Gibson had given Plaintiff permission to call the police officer, Gibson

14   allegedly replied:

15           I gave you permission to call the mother fucker, not to file a grievance
             against me.  You just slipped on that banana peel I warned you about.
16           You filed the first one and now you're threatening to file the second
             about me asking you for a little loan.  Fuck that, I'm violating you for
17           that shit.  Next time you will shut up and not speak out.  You could
             have cost me my job.
18

19   FAC ¶ 49.  Additionally, Plaintiff alleges that Gibson told him that Defendant Lee "had agreed to

20   sign off on the false violation, and agreed to assist Gibson in his admitted retaliation against

21   plaintiff, and that Lee was aware and approved of using this 'ruse' to prevent plaintiff from engaging

22   in further speech."  FAC ¶ 52.  Lee apparently signed off on the Berkeley police report, which was

23   then 17 days old, as the basis for revoking Plaintiff's parole.  FAC ¶ 53.  Plaintiff was told that he

24   should not complaint about his treatment, or there would be "serious consequences."  FAC ¶ 54.

25   Plaintiff was handcuffed in the back of a police vehicle, and transported to North County Jail

26   in Oakland, where he was booked on a parole violation.  FAC ¶ 56.  Plaintiff later received a copy of

27   the parole violation document, which indicated that the basis for revocation was that Plaintiff had

28   harassed police officers.  FAC ¶ 57.  The document also falsely stated that Plaintiff was unemployed

and did not have stable housing.  FAC ¶ 58.  Plaintiff alleges that Gibson and Lee knew these statements were false, and made them in an attempt to prevent Plaintiff from being released at his subsequent parole hearing.  *Id.*  Lee and Gibson recommended that Plaintiff receive nine months in custody for his parole violation.  FAC ¶ 59.

Plaintiff was held in custody for 13 days, and then was released at his probable cause hearing.  FAC ¶ 60.  After being released, Plaintiff reported to Gibson, and indicated that he wanted to file a new grievance about his treatment.  FAC ¶ 61.  Gibson refused to provide Plaintiff with a grievance form, despite Plaintiff's protests that Gibson was required to do so under state and federal law.  *Id.*  Plaintiff attempted to complain to Lee, but Lee told Plaintiff that he was "too busy" and that Plaintiff was a "pain in the ass."  *Id.*

On or about January 20, 2011, Gibson received word from the Contra Costa County District Attorney's office that Plaintiff had an outstanding warrant.  FAC ¶ 62.  The warrant apparently stemmed from conduct that occurred before Plaintiff was on parole, and that was thus not a violation of his parole.  FAC ¶ 63.  The DA's office explained this to Gibson, and further explained that the warrant was a result of an unrelated offense in 2006-2007.  FAC ¶ 64.

Shortly thereafter, Gibson called Plaintiff and told him that he needed to come to the parole office to sign some paperwork.  FAC ¶ 65.  Plaintiff went to the parole office later that day, and was again rushed by a group of parole agents led by Gibson, who was "in the same clenched-fist boxer's pose."  FAC ¶ 66.  Gibson approached Plaintiff, grabbed him by the back of the neck, and slammed him into the wall.  *Id.*  Plaintiff objected that the Contra Costa warrant was for conduct that occurred before his parole, and that it thus could not be a parole violation.  FAC ¶ 67.  Gibson agreed, and stated that Plaintiff was being arrested on the warrant, but not for a parole violation.  *Id.*

Plaintiff was again transported to the North County Jail, where he was booked only on a parole violation.  FAC ¶ 68.  Plaintiff called and again stated his objection that the conduct that formed the basis for the Contra Costa warrant occurred before he was on parole.  FAC ¶ 69.  Gibson responded that he and Lee wanted to "send a message" to Plaintiff to discourage him from complaining or filing grievances.  *Id.*  Gibson kept Plaintiff on a parole hold for 10 days, which prevented Plaintiff from posting bail, though Gibson knew that Plaintiff had not violated parole.  *Id.*

United States District Court
For the Northern District of California

1    As soon as Gibson lifted the hold, Plaintiff posted bail and was released.  FAC ¶ 70.  Plaintiff

2    alleges that Gibson and Lee placed the hold in retaliation for Plaintiff's complaints.  FAC ¶ 71.

3    Plaintiff alleges that because of Defendant's actions, he has experienced lost wages, wrongful

4    seizure and imprisonment, severe emotional distress, violation of constitutional rights, and other

5    damages.  FAC ¶ 72.

6          Plaintiff filed the instant suit against Gibson and Lee on December 12, 2012.  Docket No. 1.

7    Defendants filed a motion to dismiss, and in response, Plaintiff filed a first amended complaint on

8    March 13, 2013.  Docket No. 10, 21.  The first amended complaint alleges ten causes of action:

9    (1) unlawful seizure in violation of the Fourth Amendment; (2) violation of the Fourteenth

10   Amendment's Due Process Clause; (3) violation of First Amendment rights; (4) violation of

11   California Civil Code § 52.1; (5) intentional infliction of emotional distress; (6) breach of fiduciary

12   duty; (7) negligence; (8) assault and battery; (9) false imprisonment; and (10) retaliatory harassment.

13   Defendants bring the instant motion seeking dismissal of claims two, four through seven, nine, and

14   ten.  Defendants also seek dismissal of claim eight as to Defendant Lee only.  Defendants argue that

15   the Fourteenth Amendment claim fails to state a claim, and that Defendants are immune as to claims

16   four through seven, nine and ten.  Defendants also argue that the complaint fails to state a claim as to

17   claims six, seven, eight, and ten.

18                              **III.    <u>DISCUSSION</u>**

19          Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon

20   which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6)

21   challenges the legal sufficiency of the claims alleged.  *See Parks Sch. Of Bus. Symington*, 51 F.3d

22   1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of

23   material fact as true and construe them in the light most favorable to the nonmoving party, although

24   "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6)

25   dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not

26   contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

27   plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content

28   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The pro se complaint will be dismissed only if it appears "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pena v. Gardner*, 967 F.2d 469, 471 (9th Cir.1992) (internal citations omitted). The Ninth Circuit has recently clarified that courts "continue to construe pro se filings liberally when evaluating them under *Iqbal....* [O]ur 'obligation' remains, 'where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc)). However, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

A.    Fourteenth Amendment Due Process Claim

Plaintiff alleges that Defendants:

> violated plaintiff's rights by incarcerating him without probable cause, knowingly subjecting him to seizure of his person without violating parole, and subjecting him to summary punishment without due process of law and, in doing so, violated his rights as secured by the Fourteenth Amendment, including unlawfully depriving him of his liberty.

FAC ¶ 76. Defendants argue that this claim should be dismissed because: (1) to the degree that Plaintiff complains that he was arrested without probable cause, this claim is duplicative of Plaintiff's Fourth Amendment claim; and (2) to the degree that the claim alleges that Plaintiff was not provided due process after his initial arrest, it fails as a matter of law.

**United States District Court**
For the Northern District of California

1         1.    <u>Initial Arrest</u>

2         Defendants argue that to the degree that Plaintiff's Due Process claim is based on his

3    allegations that the parole officers had him arrested without probable cause, it should be dismissed

4    because it is duplicative of his Fourth Amendment claim.

5         The Supreme Court has been reluctant to view claims for constitutional wrongs as sounding

6    in substantive due process when the wrong complained of could more aptly be placed within "the

7    specific guarantees of the various provisions of the Bill of Rights." *Albright v. Oliver*, 510 U.S. 266,

8    273 (1994).  In *Albright*, the Court rejected a petitioner's claim that his arrest without probable cause

9    violated his substantive due process rights.  Holding instead that "it is the Fourth Amendment . . .

10   under which petitioner Albright's claim must be judged," the Court stated "where a particular

11   Amendment provides an explicit textual source of constitutional protection against a particular sort

12   of government behavior, that Amendment, not the more generalized notion of substantive due

13   process, must be the guide for analyzing these claims." *Id.*  Likewise, the Court in *Graham v.*

14   *Connor*, 490 U.S. 386 (1989), refused to construe a petitioner's excessive force claim as a violation

15   of his substantive due process rights when it could more appropriately be framed as a violation of his

16   rights under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. at 395 (holding that "because

17   the Fourth Amendment provides an explicit textual source of constitutional protection against this

18   sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion

19   of 'substantive due process,' must be the guide for analyzing these claims.").

20        Plaintiff argues that while it is "generally true" that false arrest claims should be analyzed

21   under the Fourth Amendment rather than the "more generalized Fourteenth Amendment

22   protections," his Fourteenth Amendment claim should nonetheless be permitted to proceed because

23   "certain wrongs affect more than a single right, and accordingly, can implicate more than one of the

24   constitution's commands."  Pl.'s Opp. at 7-8 (quoting *Armendariz v. Penman*, 75 F.3d 1311, 1320

25   (9th Cir. 1996)).  The case Plaintiff cites for this proposition, however, is unhelpful as it specifically

26   holds that the plaintiffs in that case could not bring a substantive due process claim under the

27   Fourteenth Amendment when the complained-of conduct fell squarely within the Fourth and Fifth

28   Amendments:

Because the Fourth and Fifth Amendments provide explicit limitations
on the type of government conduct challenged by the plaintiffs,
*Graham* dictates that those Amendments, not the Fourteenth
Amendment's guarantee of substantive due process, should guide the
analysis of the plaintiffs' claim.  This conclusion follows
straightforwardly from *Graham*, for while this case does not arise in
the criminal context, the Supreme Court's admonition in *Graham* is no
less applicable here than in that case or in *Albright*.

*Amendariz*, 75 F.3d at 1320, *abrogated on other grounds as recognized in Action Apartment Ass'n,*

*Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1024-25 (9th Cir. 2007).

Plaintiff cites to a number of other cases in support of his position that he may bring a

Fourteenth Amendment claim based on the revocation of his parole, but these cases all concern the

procedural due process requirements once an individual is in police custody.  Both *Fairley v.*

*Luman*, 281 F.3d 913, 917 (9th Cir. 2002) and *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th

Cir. 2001), for example, concerned allegations of due process violations where the arresting

agency's failure to take certain steps to verify an arrestee's identity post-arrest resulted in innocent

person being detained for lengthy periods of time.  *See also Zadvydas v. Davis*, 533 U.S. 678, 690

(2001) (concerning due process rights of immigrants in removal proceedings facing indefinite

detention).

Plaintiff also points to *Oviatt By & Through Waugh v. Pearce*, where the court found that

several state statutes requiring speedy arraignment and restricting lengthy pre-trial detention created

a constitutionally protected liberty interest.  954 F.2d 1470, 1475 (9th Cir. 1992).  Plaintiff argues

that in this case, Cal. Code Reg. § 2600, which restricts the circumstances under which a parole

agent may impose a parole hold, similarly creates a constitutionally protected liberty interest.  Pl.'s

Opp. at 8.  Even assuming, arguendo, that this is the case, *Oviatt* does not support Plaintiff's

contention that he should be able to bring a Fourteenth Amendment claim for the initial detention in

addition to his Fourth Amendment claim.[3]  Initially, *Oviatt* did not concern allegations that the

---

[3] Though neither party raises this, it would also seem that Plaintiff's argument that this
regulation creates a liberty interest that was violated by his arrests is undermined by a state statute
providing that all parolees shall be provided notice, upon release, that "he or she is subject to search
or seizure by a probation or parole officer or other peace officer at any time of the day or night, with
or without a search warrant or with or without cause."  Cal. Penal Code § 3067.  The Supreme Court
has held that this statute does not violate the Fourth Amendment.  *Samson v. California*, 547 U.S.

United States District Court

For the Northern District of California

1   plaintiff's initial arrest lacked probable cause; the allegation instead was that the defendant's

2   administrative error caused the plaintiff to languish in jail for over 100 days without an arraignment.

3   954 F.2d at 1473.  The court in that case thus did not squarely address the question at issue here.

4          Looking at the court's analysis in *Oviatt*, however, further suggests that Plaintiff's argument

5   is unavailing.  Once the court there determined that the state statute created a constitutionally

6   protected liberty interest, it next turned to the question of "what process is due under the Fourteenth

7   Amendment."  *Id.* at 1475.  In the case at bar, the analysis under this question would concern what

8   procedures are appropriate to review parole holds to ensure that they were justified under § 2600.  In

9   this case, however, Plaintiff concedes that his complaint is not with the revocation hearings that

10  followed his arrests, but with the initial arrests and his subsequent detention prior to the parole

11  revocation hearings.  Pl.'s Opp. at 6.  The analysis of Plaintiff's post-arrest detention under the

12  Fourteenth Amendment is discussed further below, but under *Graham*, the appropriate lens for

13  evaluating the constitutionality of these arrests is the Fourth, not the Fourteenth Amendment.

14         Plaintiff objects that preventing him from bringing a Fourteenth Amendment claim for

15  revocation of parole without due process is "troubling" because it would allow a parole officer to

16  repeatedly arrest a parolee on a frivolous allegation of violation, and the parolee would lack recourse

17  so long as he was released at a timely parole hearing.  While a parolee wrongfully arrested may not

18  bring a due process claim, he would still have recourse, as Plaintiff does here, under the Fourth

19  Amendment to challenge each arrest, even where appropriate procedures were followed afterwards

20  to review the arrest and release him.

21         This Court thus finds that to the degree that Plaintiff's Fourteenth Amendment claim is based

22  on allegations that his initial arrests were without probable cause, such complaints are more

23  appropriately addressed by the Fourth Amendment claim in his complaint.

24         2.      Post-Arrest Due Process

25         Defendants argue that Plaintiff's Fourteenth Amendment claim must also fail as to any claim

26  that Plaintiff's procedural due process rights were violated by a failure to timely review the parole

27  _____

28  843, 856 (2006).

1  revocation after his arrest.  The Supreme Court considered the procedural due process rights of

2  parolees facing revocation in *Morrissey v. Brewer*, 408 U.S. 471 (1972).  In *Morrissey*, the Court

3  recognized that there are two stages to the process of parole revocation:  the arrest of the parolee and

4  preliminary hearing, and the formal revocation of parole.  *Id.* at 485.

5     As Plaintiff was released and never suffered formal revocation, only the first stage is at issue

6  in the instant case.  As to the first stage, the Court held that "due process requires that after the

7  arrest, the determination that reasonable ground exists for revocation of parole should be made by

8  someone not directly involved in the case."  *Id.*  The parolee must be given notice of the preliminary

9  hearing, and must be provided the opportunity to speak on his own behalf and present relevant

10  evidence.  *Id.* at 486-87.  Further,

11     The hearing officer shall have the duty of making a summary, or
   digest, of what occurs at the hearing in terms of the responses of the

12     parolee and the substance of the documents or evidence given in
   support of parole revocation and of the parolee's position.  Based on

13     the information before him, the officer should determine whether there
   is probable cause to hold the parolee for the final decision of the

14     parole board on revocation.  Such a determination would be sufficient
   to warrant the parolee's continued detention and return to the state

15     correctional institution pending the final decision.

16  *Id.* at 487.   Though the Court in *Morrissey* did not specifically indicate how soon after arrest the

17  preliminary hearing had to occur, the Ninth Circuit has found that an administrative hearing

18  conducted 21 days after a parolee was initially detained "was prompt enough to qualify as the

19  preliminary probable cause determination required by *Morrissey*."  *Pierre v. Washington State Bd.*

20  *of Prison Terms & Paroles*, 699 F.2d 471, 473 (9th Cir. 1983).

21     In this case, Plaintiff received a preliminary hearing thirteen days after his first arrest, and

22  was released ten days after his second arrest without a hearing.  FAC ¶ 60, 69.  As to the first arrest,

23  Plaintiff does not contend that the revocation hearing was inadequate.  Pl.'s Opp. at 6.  In the second

24  case, it appears that all attempts to revoke his parole were dropped after the parole hold was lifted

25  and he was released.  FAC ¶ 69.  No procedural due process rights under *Morrissey* were violated in

26  either instance.

27     The Court thus concludes that Plaintiff has not stated a claim for violation of his procedural

28  due process rights under the Fourteenth Amendment in connection with the post-arrest proceedings.

1 As the facts Plaintiff alleges do not support a claim for the violation of his Fourteenth Amendment

2 rights at any point in the parole revocation proceedings, Plaintiff's second claim is dismissed with

3 prejudice.

4 B.   Immunity on State Law Claims

5        Defendants argue that all of Plaintiff's state law claims except the assault and battery claim

6 should be dismissed on immunity grounds.  Defendants base their claim of immunity on three

7 different provisions of California state law.

8        1.   Prosecutorial Immunity

9             a.   Initiation of Revocation Proceedings

10        California Government Code § 821.6 provides that "[a] public employee is not liable for

11 injury caused by his instituting or prosecuting any judicial or administrative proceeding within the

12 scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov. Code

13 § 821.6.  Though this section is primarily applied to immunize prosecuting attorneys and related

14 personnel, it applies to all employees of government entities.  *Kemmerer v. Cnty. of Fresno*, 200 Cal.

15 App. 3d 1426, 1436 (Ct. App. 1988).  Likewise, though it is most often applied in the context of

16 malicious prosecution claims, it is not limited to such claims.  *Id.* (rejecting argument that § 821.6 is

17 "limited to suits for damages for malicious prosecution").  Courts have applied this section to bar

18 suits by parolees against parole officers based on the officer's actions in initiating parole revocation

19 proceedings.  *See Kim v. Walker*, 208 Cal. App. 3d 375, 382 (Ct. App. 1989), *rejected on other*

20 *grounds in State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 n.7 (2004).

21        Plaintiff argues that § 821.6 is inapplicable as that section only applies to claims for

22 malicious prosecution and that inasmuch as *Kemmerer* holds to the contrary, it is no longer good

23 law.  Pl.'s Opp. at 10-11.  He points to two cases in this District that he contends support his

24 argument.  The first, *Randolph v. City of E. Palo Alto*, does not address *Kemmerer's* rulings on §

25 821.6 at all, but focuses on *Kemmerer's* immunity analysis under Cal. Gov. Code § 820.2.

26

27

28

United States District Court
For the Northern District of California

1    C 06-07476 SI, 2008 WL 618908, at *11 (N.D. Cal. Mar. 1, 2008).[4]  It is thus inapplicable to the

2    immunity analysis under § 821.6.

3           The second case Plaintiff cites does, at first blush, appear to provide some support for his

4    position.  In *Dinius v. Perdock*, the plaintiff brought claims for intentional infliction of emotional

5    distress in connection with allegations that the defendants made false statements and fabricated

6    evidence in the course of a police investigation that ultimately led to criminal charges being filed

7    against him.  C 10-3498 MEJ, 2012 WL 1925666, at *9 (N.D. Cal. May 24, 2012).  The court

8    rejected the argument that the plaintiff's intentional infliction of emotional distress claims were

9    barred by § 821.6.  *Id.* at *8-9.  While acknowledging that a number of California court decisions

10   had found § 821.6 to barred tort claims other than malicious prosecution that were brought for

11   actions taken in the course of initiating judicial or administrative proceedings, the court relied upon

12   the California Supreme Court decision in *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710 (1974) to

13   conclude that § 821.6 applies only to claims for malicious prosecution.

> The Court agrees with the California Supreme Court's decision in
> *Sullivan* and finds that Section 821.6 only applies to claims for
> malicious prosecution.  A recent law review article has examined the
> inconsistent positions taken by California courts on this issue and
> explained why the better approach – which this Court adopts – is to
> interpret Section 821.6 as only immunizing public employees' conduct
> with respect to claims stemming from the institution or prosecution of
> a judicial proceeding. . . .  For these reasons, the Court is not
> persuaded by the County Defendants' argument and follows Sullivan
> to find that Section 821.6 does not automatically immunize County
> Defendants' investigatory conduct against Dinius's IIED claim.

20   *Id.* at *9.

21          In *Sullivan*, the California Supreme Court addressed "the question whether an individual who

22   is confined in a county jail beyond his proper jail term may maintain an action for false

23   imprisonment against the county or whether such a suit is barred by" § 821.6.  12 Cal. 3d at 713.

24   The Court there found that § 821.6 did not apply to claims for false imprisonment, noting that the

25   language and legislative history of § 821.6 indicated that the legislature had not intended to disturb

---

27          [4]  The case in *Randolph* concerned allegations of negligent hiring, training, and supervision
28   of police officers, and the court found that § 820.2 did not apply because the defendant's actions
     were ministerial rather than discretionary.  2008 WL 618908, at *11.

United States District Court

For the Northern District of California

the historical rule that government employees were immune from claims of malicious prosecution but not false imprisonment.  *Id.* at 719-22.  The court in *Dinius* quotes *Sullivan* as holding that "the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for malicious prosecution."  2012 WL 1925666 at *8.  This quote, however, omits the end of the sentence.  The full quote from *Sullivan* is:  "the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for Malicious prosecution and not for False imprisonment."  *Id.* at 719.  As the *Dinius* court acknowledges, numerous California state courts have distinguished *Sullivan* and limited its holding to false imprisonment claims.  *See, e.g.*, *Randle v. City & Cnty. of San Francisco*, 186 Cal. App. 3d 449, 456 (Ct. App. 1986) ("The cases which appellant discusses as limiting the immunity under section 821.6 do so in the specific context of distinguishing actions for malicious prosecution from ones for false arrest or false imprisonment."); *Cappuccio, Inc. v. Harmon*, 208 Cal. App. 3d 1496, 1501 (Ct. App. 1989) (finding that § 821.6 barred claims for libel and slander, and noting that "[w]hat the court [in *Sullivan*] held was that Government Code section 821.6 does not apply to a prosecution for false imprisonment").  Other than *Dinius*, it appears that no California state court has yet to read *Sullivan* as limiting the scope of § 821.6 immunity to malicious prosecution actions to nothing else.  Instead, *Sullivan* only appears to hold § 821.6 immunity does not apply to false imprisonment claims.

The precise reach of *Sullivan* need not be determined, however, because even assuming *Dinius* is an accurate statement of California law, *Dinius* does not preclude the applicability of § 821.6 here.  Though *Dinius* suggests that § 821.6 only immunizes for claims of malicious prosecution, the court later frames this rule as "only immunizing public employees' conduct with respect to claims stemming from the institution or prosecution of a judicial proceeding."  2012 WL 1925666, at *9.  *See* 2012 WL 1925666 at *9 n.10 ("[t]his result does not mean that future plaintiffs may plead around Section 821.6 immunity by simply alleging claims other than malicious prosecution.").  Thus, even under *Dinius*, acts constitute malicious prosecution within § 821.6 immunity may be somewhat determined expansively.

United States District Court

For the Northern District of California

Consistent with that interpretation, in *Ross v. San Francisco Bay Area Rapid Transit Dist.*, 146 Cal. App. 4th 1507, 1516 (2007), the court found that § 821.6 barred claims that fell "under the general rubric of malicious prosecution." *Id.* The court held that § 821.6 applied to the plaintiff's claims for wrongful termination in violation of public policy because "[t]he gravamen of these claims is that, acting out of discriminatory and retaliatory motives, BART employees initiated and prosecuted administrative proceedings to discipline or discharge Ross based on accusations they knew to be false." *Id.*

In this case, the "gravamen" of most of Plaintiff's state law tort claims is that Defendants had initiated parole revocation proceedings even though they knew that he had not violated his parole and in retaliation for the grievances that he had filed. *See* FAC ¶¶ 79-84, 88-93, 96-102. For example, Plaintiff's claim under California Civil Code § 52.1 states that Defendants violated Plaintiff's "right to be free of unreasonable and unlawful seizure of" his person, his "right to be free from retaliation for exercise of speech and expression" under the First Amendment, his "right to be free from summary punishment without due process," and his "right to protection from bodily restraint, harm, or personal insult." FAC ¶ 80. Similarly, the negligence claim alleges that Defendants breached their duty to Plaintiff in that they failed to "refrain from wrongfully arresting and/or detaining plaintiff; [t]o refrain from abusing their authority granted them by law; [t]o refrain from recommending that the plaintiff's parole be violated when they knew plaintiff did not violate parole; [and] [t]o refrain from violating plaintiff's rights guaranteed by the united [sic] States Constitution and California Constitution." FAC ¶ 91. The threat and bulk of both these claims would appear to fall under the "general rubric" of malicious prosecution. The claims for intentional infliction of emotional distress and retaliatory harassment likewise appear to stem primarily from conduct connected with the initiation of parole revocation proceedings. FAC ¶¶ 82-84, 99-102. To the extent these claims are so connected, they are barred by § 821.6 under *Ross*. On the other hand, to the extent these claims are based on the initial arrest/detention separate from the initiation of parole revocation proceedings, the discussion below of false imprisonment claims applies.

Plaintiff's breach of fiduciary duty claim is not barred by § 821.6 to the extent it is based on Plaintiff's allegations that Gibson breached his duty to Plaintiff by "shaking down plaintiff when

United States District Court

For the Northern District of California

1    plaintiff complained and retaliating against plaintiff when plaintiff filed grievances." FAC ¶ 86.

2    Since this is only partially based on Gibson's actions in revoking parole, § 821.6 does not entirely

3    bar suit on this claim, at least to the extent it is based on Gibson's "shake down" of Plaintiff.

4                    b.    False Imprisonment

5            The application of § 821.6 to Plaintiff's false imprisonment claim presents a closer question.

6    As discussed above, *Sullivan* held that § 821.6 does not provide immunity for claims of false

7    imprisonment. 12 Cal. 3d at 719-20. The *Sullivan* court specifically noted another provision of the

8    Government Code, § 820.4, provides immunity for public employees exercising due care in the

9    exercise or enforcement of the law but specifically states that "[n]othing in this section exonerates a

10   public employee from liability for false arrest or false imprisonment."

11           Defendants correctly point out, however, that the facts here are distinguishable from those in

12   *Sullivan* in that *Sullivan* involved an individual who had been detained in jail after all proceedings

13   against him had terminated and he had completed his sentence. 12 Cal. 3d at 713-14. Here, on the

14   other hand, parole revocation proceedings were pending during the duration of Plaintiff's

15   incarceration in both of the challenged incidents. Defendants argue that because Plaintiff's false

16   imprisonment claim is fundamentally aimed at Defendants' actions in revoking Plaintiff's parole, it

17   is barred by § 821.6.

18           Defendants' contention is supported by a California Supreme Court case holding that § 821.6

19   prevented a plaintiff from recovering damages for false imprisonment for any period after his

20   arraignment on criminal charges. *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 748 (1997). In

21   *Asgari*, the plaintiff was arrested and later charged with a criminal offense. *Id.* at 748. He remained

22   in custody until he was ultimately acquitted following a jury trial. *Id.* He then brought suit against

23   the arresting police officers, alleging false arrest and related causes of action. *Id.* The jury in this

24   civil suit was instructed that it could award the plaintiff damages for the entire time he had been in

25   custody if it found sufficient evidence to rebut the presumption that the district attorney exercised

26   independent judgment in filing the criminal charges. *Id.* at 752. The California Supreme Court

27   found this to be an error, and held that "the jury should have been instructed that the immunity from

28   liability for injury caused by malicious prosecution, provided to public employees by Government

1  Code section 821.6, precludes a plaintiff in a false arrest action from recovering damages that are

2  attributable to the period of the plaintiff's incarceration *that follows his or her arraignment on*

3  *criminal charges*." *Id.* (Emphasis added.)

4      The Court distinguished between the tort of false imprisonment, which "is defined as the

5  unlawful violation of the personal liberty of another," and the tort of malicious prosecution, which

6  "consists of initiating or procuring the arrest and prosecution of another under lawful process, but

7  from malicious motives and without probable cause." *Id.* at 757 (internal citations and quotation

8  marks omitted).  Thus, "[f]alse arrest or imprisonment and malicious prosecution are mutually

9  inconsistent concepts, the former relating to conduct that is without valid legal authority and the

10  latter to conduct where there is valid process or due authority." *Id.*  Accordingly, the plaintiff's

11  "false imprisonment ended when he was arraigned in municipal court on the felony complaint seven

12  days after he was arrested" because "[a]t that point, plaintiff's confinement was pursuant to lawful

13  process and no longer constituted false imprisonment." *Id.*  The Court expressed concern that a

14  contrary rule would undermine the statutory immunity for malicious prosecution by allowing the

15  plaintiff to recover for time spent in jail while criminal charges were pending. *Id.* at 754.

16      In this case, parole revocation proceedings were pending against Plaintiff the entire time that

17  he was in custody.  It cannot be said that his detention during this period was "without valid legal

18  authority."  *See* Cal. Penal Code § 3067 (parolees are "subject to search or seizure by a probation or

19  parole officer or other peace officer at any time of the day or night, with or without a search warrant

20  or with or without cause.")  Under *Asgari*, therefore, Plaintiff's false imprisonment claim is barred

21  by § 821.6 because there were formal proceedings pending against him during the entire time of his

22  incarceration.

23      Accordingly, the Court finds that Defendants are immune from liability under § 821.6 for

24  Plaintiff's claims under California Civil Code § 52.1, and his claims for negligence, intentional

25  infliction of emotional distress, false imprisonment, and retaliatory harassment.  Section 821.6 does

26  not, however, bar Plaintiff's claims for breach of fiduciary duty based on the alleged "shake down"

27

28

17

**United States District Court**
For the Northern District of California

1   and assault and battery, as those claims are based on actions other than the initiation of parole

2   revocation proceedings.[5]

3          2.     Immunity for Parole Determinations and for Discretionary Actions

4         Defendants also argue that immunity applies based on two statutes immunizing public

5   employees for injuries resulting from actions taken pursuant to discretion vested in them by virtue of

6   their positions, and from decisions about parole.  Cal. Gov. Code §§ 820.2, 845.8.  Plaintiff raises

7   various arguments as to why these immunities do not apply to his claims here.  As Defendants are

8   immune under § 821.6 for all of Plaintiff's state law claims except the breach of fiduciary duty based

9   on the "shake down" and assault and battery claims, the Court need not consider whether these other

10  statutory immunities also bar suit for those claims.  Further, as the fiduciary duty and assault and

11  battery claims do not stem from actions within Defendants' legitimately vested discretion or actions

12  related to the revocation of Plaintiff's parole, neither § 820.2 nor § 845.8 provide immunity for those

13  claims.

14  C.    Failure to State a Claim for State Law Claims Six and Eight

15        Defendants additionally argue that Plaintiff's sixth, seventh, and tenth claims should be

16  dismissed for failure to state a claim, and that Plaintiff's eighth claim should be dismissed as to

17  Defendant Lee.  As Defendants are immune from suit as to Plaintiff's seventh and tenth claims, this

18  Court need not address the question of whether those claims should be dismissed on the merits.

19        1.     Breach of Fiduciary Duty

20        Defendants argue that Plaintiff's breach of fiduciary duty claim should be dismissed because

21  a parole officer owes no fiduciary duty to the parolees she supervises.  "Before a person can be

22  charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the

23  benefit of another, or must enter into a relationship which imposes that undertaking as a matter of

24  law" *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386, 181 P.3d 142, 150 (2008)

25  (internal alteration and quotation marks omitted).

26

27  _____

28        [5] For other reasons stated below, however, the breach of fiduciary claim is dismissed.

United States District Court

For the Northern District of California

Plaintiff cites to *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) in support of his position that parole officers owe a fiduciary duty to parolees under their supervision.  Pl.'s Opp. at 20-21.  While *Gagnon* does contain a discussion of a parole officer's responsibilities to parolees, it did not discuss whether such an officer owes a fiduciary duty to the parolee.  Also, the court explicitly recognized that a parole officer's responsibilities to the public will at times trump her responsibilities to parolees under her supervision.  *Id.* at 784 ("The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety.").  Plaintiff points to no case, citing *Gagnon* or otherwise, holding that a parole officer has a fiduciary duty towards parolees, and this Court could find none.

Nor does Plaintiff allege any facts that would support a finding that Gibson "knowingly under[took] to act on behalf and for the benefit of" Plaintiff.  Accordingly, the Court dismisses this claim with prejudice for failure to state a claim.

### 2. Assault & Battery

Defendants seek to dismiss the assault and battery claims as to Defendant Lee.  Plaintiff's complaint does not allege that Lee was one of the group of officers who rushed him on either of the two occasions described in the complaint.  FAC ¶¶ 45-46, 66.  On each occasion, Plaintiff alleges that Gibson was involved, and several other unnamed parole agents.  *Id.*  A party who has been injured by an assault "may recover damages not only from the actual assailant, but from any other person who aids, abets, counsels or encourages the assault."  *Ayer v. Robinson*, 163 Cal. App. 2d 424, 428 (1958).  While Plaintiff's complaint alleges that Lee was the supervisor of the Berkeley parole office, and that he agreed to assist Gibson in retaliating against Plaintiff by falsely reporting that he violated his parole, nothing in the complaint indicates that Lee was aware of the alleged assault and battery, much less that he aided, abetted, counseled, or encouraged Gibson in committing it.[6]

---

[6] The Court notes "[t]he doctrine of respondeat superior is not applicable to the relationship between a supervisor and his subordinate employees," so it wouldn't apply to hold Lee responsible. *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 823 (2002) (quoting *Malloy v. Fong*, 37 Cal. 2d 356, 378 (1951)); *see also Godoy v. Wadsworth*, CV 05-02913 NJV, 2009 WL 1458041 (N.D. Cal. May 21, 2009) (citing *Hillenbrand* and dismissing assault and battery claims against supervisors because respondeat superior was inapplicable).

**United States District Court**
For the Northern District of California

1    Accordingly, this Court dismisses this claim as against Defendant Lee for failure to state a

2    claim.

3                                    **IV.    CONCLUSION**

4    For the foregoing reasons, this Court **GRANTS** Defendants' motion, dismissing Plaintiff's

5    second, fourth, fifth, sixth, seventh, ninth, and tenth claims with prejudice, and dismissing Plaintiff's

6    eighth claim as to Defendant Lee with leave to amend.  Thus, the status of the claims are as follows:

7              (1)    unlawful seizure in violation of the Fourth Amendment – not challenged on

8                     this motion;

9              (2)    violation of the Fourteenth Amendment's Due Process Clause – dismissed

10                    with prejudice;

11             (3)    violation of First Amendment rights – not challenged on this motion;

12             (4)    violation of California Civil Code § 52.1 – immune – dismissed with

13                    prejudice;

14             (5)    intentional infliction of emotional distress – immune – dismissed with

15                    prejudice;

16             (6)    breach of fiduciary duty – dismissed with prejudice for failure to state a claim;

17             (7)    negligence – immune – dismissed with prejudice;

18             (8)    assault and battery – dismissed as to Defendant Lee without prejudice;

19             (9)    false imprisonment – immune – dismissed with prejudice; and

20             (10)   retaliatory harassment – dismissed with prejudice for failure to state a claim.

21    This order disposes of Docket No. 24.

22

23    IT IS SO ORDERED.

24

25    Dated: May 23, 2013

26                                    _____
                                      EDWARD M. CHEN
27                                    United States District Judge

28